# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6326 | **DATE** | 12/3/2001 |
| **CASE TITLE** | Chicago District Council etc.et al. vs. Richard Zerth et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Richard and Donald Zerth now move to dismiss the claims against them. The upshot of all this is that the issues presented appear to be considerably more complicated than plaintiffs have indicated. Plaintiffs, in light of that, are directed to file yet another memorandum, this one within 21 days. And it is possible we shall ask for further help from the Zerths - the real issues did not surface until their recent brief - but we leave that to another day.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 04 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 20 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 DEC -4 AM 8:02 | date mailed notice | |
| WAH | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHICAGO DISTRICT COUNCIL OF )
CARPENTERS PENSION FUND, et al., )
)
Plaintiffs, )
)
vs. ) No. 00 C 6326
)
RICHARD ZERTH, DONALD ZERTH, )
FRED A. HAYES, and NATIONAL- )
AMALGAMATED WORKERS UNION )
LOCAL 711, )
)
Defendants. )

**DOCKETED**
**DEC 0 4 2001**

## MEMORANDUM OPINION AND ORDER

The Chicago District Council of Carpenters (Carpenters Union) had an agreement with Roof Right Roofing & Insulation Company, Inc. (Roof Right) which required Roof Right to make contributions to the Carpenter Trust Funds. According to plaintiffs, Roof Right failed to report and pay some of the required contributions. Then, in or around October 1998, the unreported employees were discharged and were thereafter coerced into becoming employees of a new company, Advance Roofing, Inc. (Advance), and members of National Amalgamated Workers Union Local 711 (Local 711). Advance entered into a collective bargaining contract with Local 711 that did not provide pension and welfare benefits. Carpenters Union filed unfair labor practice charges with the National Labor Relations Board.

Roof Right and Advance ultimately settled the unfair labor practice charges after an administrative hearing in November 1999, whereby they admitted that they were alter egos, withdrew their recognition of Local 711, rescinded the Local 711 collective bargaining contract, and recognized their obligations under the Carpenters Union contract retroactive

to October 1998. In the meantime, however, on November 1, 1999, both companies sought bankruptcy protection.

The CarpenterTrust Funds now seek to recover unpaid contributions and related damages from Richard and Donald Zerth, the principals of DRZ, Inc., the parent of Roof Right; from Fred A. Hayes, an alleged labor relations expert who plaintiffs claim executed the scheme together with the Zerths; and from Local 711. Each is charged with discriminating against the employees for the purpose of interfering with their pension and welfare rights, in violation of 29 U.S.C. §1140.

Richard and Donald Zerth now move to dismiss the claims against them. They first contend that the by-laws of both Roof Right and Advance provide for their indemnification as officers, that Roof Right and Advance are both in bankruptcy, that any judgment against them (the Zerths) will create a liability against the bankrupt estates and that this suit seeking recovery that is already provided by the reorganization plan is essentially an end run around that plan. Therefore, they argue, this suit improperly interferes with the bankruptcy proceeding. They also contend that they are not personally liable for the liabilities because there is not a sufficient basis alleged for piercing the corporate veil. Their arguments were thereafter considerably amplified in a supplemental memorandum. And that filing leads to the conclusion that ruling should be deferred and that plaintiffs should address the arguments made in that filing, as affected by the following observations.

There is a reorganization plan in place that provides for payment of apparently a great deal, but not all, of the delinquent contributions and related costs, but over a seven-year period. A key element of the plan calls for the infusion of a substantial amount of cash by the Zerth brothers and their personal guarantees of large lines of credit to Roof Right. If they

were required to pay back contributions in a lump sum it could cause collapse of the plan. Therefore, if the Bankruptcy Court were to prohibit prosecution of this suit, it might well be binding as an order "related to" the bankruptcy. *See* <u>Celotex Corp. v. Edwards</u>, 514 U.S. 300 (1995). But it has not. Further, the claim is that the Zerths are liable because their own conduct violated 29 U.S.C. §1140, not that this court should pierce the corporate veil or rectify an unfair labor practice, and no assets of the bankrupts would be lost from the estates by enforcement of a judgment against them. The Zerths might well have a claim against the bankruptcy estates because of the by-laws, but any claims they might have are, pursuant to the plan, subordinate to all other claims. Any liability would be joint and several. Plaintiffs cannot collect twice.

But do plaintiffs have a claim under 29 U.S.C. §1140? That section does not purport to protect the financial security of the funds. It is to protect individual rights, primarily to prevent the termination of employees shortly before pension rights vest so as to keep those rights from vesting (although it applies to welfare plans as well), <u>West v. Butler</u>, 621 F.2d 240 (6th Cir. 1980). Here the plaintiffs, who are not participants, are seeking to use §1140 to collect back contributions. What standing do they have? <u>Inter-Modal Rail Employees Association v. Atchison, Topeka and Santa Fe Railway Co</u>, 80 F.3d 348 (9th Cir. 1996), *vacated on other grounds,* 520 U.S. 510 (1997), cited by plaintiffs, suggests they have none. And what could they collect? Contributions are not benefits, and it is not alleged what benefits might have been lost. Liquidated damages are not part of §1140's enforcement scheme. A violation of §1140 requires a determination of an adverse employment action, but here all concede that the discharges were not discharges at all and the employees continued to have the rights accorded by the Roof Right contract.

The upshot of all this is that the issues presented appear to be considerably more complicated than plaintiffs have indicated. The above is a musing about the court's present thinking and concerns. Plaintiffs, in light of that, are directed to file yet another memorandum, this one within 21 days. And it is possible we shall ask for further help from the Zerths – the real issues did not surface until their recent brief – but we leave that to another day.

JAMES B. MORAN
Senior Judge, U. S. District Court

Dec. 3, 2001.