

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6326 | **DATE** | 3/29/2002 |
| **CASE TITLE** | Chicago District Council etc. et al vs. Richard Zerth et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Zerths' motion to dismiss is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | MAR 29 2002 | | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAH | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHICAGO DISTRICT COUNCIL OF )
CARPENTERS PENSION FUND, et al., )
)
Plaintiffs, )
) No. 00-C-6326
v. )
) Honorable James B. Moran
RICHARD ZERTH, DONALD ZERTH, FRED A. )
HAYES, AND NATIONAL-AMALGAMATED )
WORKERS UNION LOCAL 711 )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

DOCKETED
MAR 2 9 2002

Plaintiffs Chicago District Council of Carpenters Pension Fund, Chicago District Council of Carpenters Welfare Fund and Chicago and Northeast Illinois District Council of Carpenters Apprentice and Trainee Program Fund (the Funds) filed this ERISA suit against defendants Richard and Donald Zerth, Fred Hayes and National-Amalgamated Workers Union Local 711 (Local 711). The Funds allege that defendants discriminated against employees for the purpose of interfering with their pension and welfare rights, in violation of 29 U.S.C. §1140. The Zerths moved to dismiss counts I and II for failure to state a claim.[1] Fed. R. Civ. P. 12(b)(6). In an opinion dated December 3, 2001, we requested additional briefing on the questions of whether the Funds have standing to bring this suit under §1140, and whether that section authorizes the requested remedy. For the following reasons, the Zerths' motion to dismiss is granted.

---

[1] Plaintiffs' four count complaint makes parallel allegations against each defendant in separate counts: Richard Zerth (count I), Donald Zerth (count II), Hayes (count III) and Local 711 (count IV). The instant motion only addresses the counts against the Zerths, counts I and II.

## BACKGROUND

Plaintiffs are multi-employer fringe benefit trust funds which receive contributions from numerous employers pursuant to collective bargaining agreements between those employers and the Chicago and Northeast Illinois District Council of Carpenters (the Carpenters Union). One contributing employer was Roof Right Roofing & Insulation Company, Inc. (Roof Right). The Zerth's are principals of Roof Right's parent corporation.

On October 13, 1998, Roof Right entered a collective bargaining agreement with the Carpenters Union, under which it agreed to make contributions to the Funds based on the number of hours worked by its carpenter employees. Roof Right failed to report some of its covered employees and did not make the required contributions for those unreported employees. Shortly thereafter, defendants discharged these employees from Roof Right and coerced them into becoming employees of Advance Roofing, Inc. (Advance) and members of Local 711. Advance's collective bargaining agreement with Local 711 did not include any fringe benefits.

The Carpenters Union filed unfair labor practices charges with the NLRB, which were ultimately settled. Pursuant to the settlement agreement, Roof Right and Advance admitted that they were alter egos, withdrew their recognition of Local 711, rescinded the Local 711 collective bargaining agreement and recognized their obligations under the Carpenters Union collective bargaining agreement, retroactive to October 13, 1998.

On November 1, 1999, however, Roof Right and Advance both filed for bankruptcy protection. The reorganization plan currently in place provides for payment of some, but not all, of the delinquent contributions, and over a seven year period. Plaintiffs now seek a finding

that defendants individually violated the employees' ERISA rights, and that the individuals are jointly and severally liable, along with the bankrupt corporations, for the delinquent contributions.

## DISCUSSION

When deciding a 12(b)(6) motion, we must assume the truth of all well-pleaded factual allegations, making all possible inferences in the plaintiff's favor. Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund, 25 F.3d 417, 420 (7th Cir. 1994). We will dismiss a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Our December 3, 2001 opinion asked the parties to address, first, whether the Funds have standing to bring suit under §1140, and second, whether §1140 provides for repayment of delinquent contributions as a remedy for defendants alleged discrimination. In reality, these issues are directly related. Plaintiffs only have standing to the extent that the statute provides them with a remedy.

Plaintiffs are fiduciaries to plan participants. They maintain that, as fiduciaries, they have standing to seek redress for defendants' discriminatory conduct. ERISA's enforcement provision does give fiduciaries standing:

> A civil action may be brought ... by a participant, beneficiary or fiduciary (A) to enjoin any act or practice, which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. §1132(a)(3). But it is not that simple. A party only has standing to redress one's own injuries. One participant, for example, cannot bring suit to enforce another's rights.

3

We now turn to the specific provision invoked by plaintiffs to determine what rights it confers.

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, ..., or for the purpose of interfering with the attainment of any right to which such a participant may become entitled under the plan, this subchapter, ... .

29 U.S.C. §1140. In its simplest form, this section prohibits adverse action against employees for the purpose of denying or interfering with pension or welfare benefits. The quintessential example is an employee who is fired shortly before her pension rights vest. The only group that it purports to protect are plan participants or beneficiaries, *i.e.*, employees (or former employees) who are eligible for benefits, or might become eligible for benefits in the future. *See* Shahid v. Ford Motor Co., 76 F.3d 1404, 1410 (6th Cir. 1996). This provision is not designed protect the plans themselves.

Under their settlement agreement with the NLRB, Roof Right and Advance have reaffirmed the Carpenters Union collective bargaining agreement, including the carpenter employees' pension and welfare benefits. Notably, the complaint does not seek compensation for any employee's lost benefits. In fact, there is no allegation that the their benefits have not been fully restored.

Instead, the remedy plaintiffs seek is repayment of delinquent contributions to the Funds. From October 13, 1998, Roof Right was obliged to make contributions to the Funds on behalf of its carpenter employees. Plaintiffs allege that the purpose of defendants' scheme was to avoid those obligations, and that defendants should now be jointly and severally liable

4

for them. But §1140 does not protect contributions to plans. It protects individual's benefits. Plaintiffs attempt to argue that benefits and contributions are inextricably linked. We disagree. Contributions and benefits are obviously related to the extent that current contributions fund future payment of benefits, but they are really two distinct things. Participating employers pay contributions to the plans pursuant to some agreement, in this case a collective bargaining agreement with the Carpenters Union. The plan then pays benefits to participants when they retire, get injured or otherwise become eligible. Although employers' failure to pay contributions can clearly threaten the plan's fiscal integrity, Congress enacted §1140 to protect employees from discrimination, not to protect the plan's solvency. *See* West v. Butler, 621 F.2d 240, 246 (6th Cir. 1980).

Viewed another way, plaintiffs are trying to use §1140 to hold the Zerth's responsible for Roof Right's contribution obligations under the collective bargaining agreement. But §1140 "is not concerned with whether a defendant complied with the contractual terms of an employee benefit plan." Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1134 (7th Cir. 1992). ERISA already provides pension and welfare plans with a specific remedy for employers' failure to meet their contribution obligations. *See* 29 U.S.C. §1145. Unfortunately for plaintiffs, this section explicitly places the obligation to make contributions on the "employer," meaning that the Funds can only enforce it against the now-bankrupt corporate entities.[2] For the Zerths to be individually liable under §1145, plaintiffs would have to pierce the corporate veil. *See* International Broth. of Painters and Allied Trades Union v. George A. Kracher, Inc.,

---

[2] As we noted above, the reorganization plan only provides for partial repayment of the delinquent contributions. Plaintiffs readily acknowledge that they are pursuing defendants as individuals to make up for the shortfall and as a guaranty against default.

5

856 F.2d 1546 (D.C. Cir. 1988). Although the complaint alleges that Roof Right and Advance were alter egos with respect to each other, it does not allege that either is an alter ego of the Zerths. But the inadequacy of plaintiffs' remedy under §1145 does not permit them to shoehorn their allegations into an §1140 claim.

Because §1140 only protects benefits, it cannot be the basis for a suit to recover delinquent contributions. Because plaintiffs have no stake in individual employees' rights to benefits, they do not have standing to assert an §1140 claim.

## CONCLUSION

For the foregoing reasons, the Zerths' motion to dismiss is granted.

*James B. Moran*
JAMES B. MORAN
Senior Judge, U.S. District Court

DATED:　　March 29, 2002

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Eastern Division

Chicago District Council etc. et al  **JUDGMENT IN A CIVIL CASE**

v.  Case Number: 00 C 6326

Richard Zerth et al.

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that the Zerths' motion to dismiss is granted.

Michael W. Dobbins, Clerk of Court

Date: 3/29/2002

Willie A. Haynes, Deputy Clerk